# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

RICKIE SLAUGHTER,

    *Petitioner,*

vs.

RENEE BAKER, *et al.,*

    *Respondents.*

3:16-cv-00721-RCJ-WGC

ORDER

This habeas matter under 28 U.S.C. § 2254 comes before the Court on petitioner's second motion for leave to conduct discovery (ECF No. 40) and unopposed (with reservation of defenses) motion for leave to file a second amended petition (ECF No. 50). The motion for discovery seeks leave to take one deposition following upon the discovery previously allowed by the Court's grant of petitioner's prior motion for discovery.

### *Background*

Petitioner Rickie Slaughter challenges his 2012 Nevada state conviction, pursuant to a jury verdict, of multiple offenses arising from a home invasion in Las Vegas.

Slaughter's identity as one of the perpetrators and where he was at the specific time of the home invasion both were contested issues at trial.

Regarding identity, Slaughter maintains that: (a) a first photographic lineup was unduly suggestive because his picture was markedly different from the other pictures in the lineup; and (b) the prior discovery established that none of the victims identified Slaughter in a second, allegedly nonsuggestive, photographic lineup. He wants to depose the lead prosecutor at trial, Marc DiGiacomo, regarding the second photographic

lineup and his statements at trial allegedly suggesting that one or more victims identified Slaughter in the second lineup. Slaughter maintains that DiGiacomo's testimony, *inter alia*, "would help develop the record about what the prosecution knew about the outcome of the second photographic lineup, when they knew it, and the factual basis (if any) for the comments Mr. DiGiacomo made in open court." Grounds 1, 3(a), 4(a), 9(b) & 11(b) in the second amended petition present claims relating to the photographic identification evidence, including a new and unexhausted *Brady-Giglio*[1] claim in Ground 11(b). (*See* ECF No. 40, at 4-9; ECF No. 48, at 7-9; ECF No 50-1, at 2, 5-7, 12-14, 22-28, 37-38, 45-46, 57-58, 59-60 & 62-63.)

Regarding location, Slaughter maintains that: (a) his alibi defense at trial was that he was halfway across town picking up his girlfriend from work at or shortly after the time of the home invasion and therefore could not have been involved; (b) DiGiacomo objected to and prevented the defense from arguing at trial that the 911 call was received at or close to 7:11 p.m. and secured a court ruling allowing the defense to argue only a timeline where the call initially came in instead closer to 7:00 p.m.; (c) the recent discovery suggests that the 911 call allegedly did indeed come in closer to 7:11 p.m. rather than 7:00 p.m., consistent with the timeline that the defense sought to present at trial in support of Slaughter's alibi defense but that the State successfully prevented the defense from presenting; (d) the recent discovery further suggests that the State withheld substantial evidence impeaching prosecution witness Jeffrey Arbuckle's testimony that Slaughter had not picked up his girlfriend yet when he left at 7:30 p.m., including, *inter alia*, a prior inconsistent statement by Arbuckle that he instead left work fifteen minutes earlier and evidence that he further had a motive from the outset to lie to hurt Slaughter's alibi defense; and (e) the discovery suggests that the State withheld additional exculpatory evidence confirming that the victims said that the suspects had heavy Jamaican accents, wore wigs, and drove a different type of vehicle than the type that Slaughter allegedly drove. Slaughter wants to depose DiGiacomo regarding, *inter alia*, what the prosecution

---

[1] *See Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972).

knew about the 911 call evidence and further regarding the allegedly withheld exculpatory evidence. Grounds 2, 3(b), 4, 5, 6(a), 6(c), 6(d), 6(e), 7, 9(c), 11(a), and 11(c) in the second amended petition present claims relating to the foregoing, including new and unexhausted: (1) *Brady-Giglio* claims in Grounds 11(a) and (c); and (2) a *Napue*[2] claim in Ground 11(c). (*See* ECF No. 40, at 9-12; ECF No. 50-1, at 2-3, 29-36, 43-56 & 59-64.)

### *Governing Law*

Rule 6(a) of the Rules Governing Section 2254 Cases (the "Habeas Rules") provides that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure . . . ." In *Bracy v. Gramley*, 520 U.S. 899 (1997), the Supreme Court held that Rule 6 was meant to be applied consistently with its prior opinion in *Harris v. Nelson*, 394 U.S. 286 (1969), which expressly called for the adoption of the rule. 520 U.S. at 904 & 909. In *Harris*, the Supreme Court held that "where specific allegations before the court show reason to believe that the petitioner *may*, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry." 394 U.S. at 300 (emphasis added). In *Bracy*, a unanimous Supreme Court overturned a decision denying discovery where the petitioner's claim of judicial bias in his particular case was based on "only a theory," where the claim was "not supported by any solid evidence" with regard to the theory, and where the Supreme Court expressly noted that "[i]t may well be, as the Court of Appeals predicted, that petitioner will be unable to obtain evidence sufficient to support" the theory that the petitioner sought to pursue in the discovery. 520 U.S. at 908 & 909.

The Ninth Circuit, consistent with *Bracy* and *Harris*, accordingly has held repeatedly that habeas discovery is appropriate in cases where the discovery sought only might provide support for a claim. *See, e.g., Pham v. Terhune*, 400 F.3d 740, 743 (9th Cir. 2005); *Jones v. Wood*, 114 F.3d 1002, 1009 (9th Cir. 1997). *See also Osborne v. District Attorney's Office*, 521 F.3d 1118, 1133 (9th Cir. 2008), *reversed on other grounds*,

---
[2] *See Napue v. Illinois*, 360 U.S. 264 (1959).

3

*District Attorney's Office v. Osborne*, 557 U.S.52 (2009) (in discussing its precedent in *Jones* as to habeas discovery, the Ninth Circuit reinforced the point that a court should allow discovery that, as emphasized by the Court of Appeals, only "*may* establish" a factual basis for the petitioner's claim).[3]

### *Discussion*

In its prior order, the Court rejected respondents' reliance upon the rule in *Cullen v. Pinholster*, 563 U.S. 170 (2011), as a basis for denying the discovery sought on the premise that the Court's review on the merits necessarily will be restricted to the record before the state courts. (ECF No. 31, at 1.) Respondents did not file a motion for rehearing from the Court's prior order, but respondents now seek to reargue the point in opposition to the current motion. (ECF No. 46, at 2-3.)

The Court again is not persuaded.

*Pinholster* restricts the consideration of evidence only as to claims that have been adjudicated on the merits by the state courts and that withstand deferential review under AEDPA. There are numerous potential steps to go through before the Court will be at a point where it will be determining whether, in the final analysis, *Pinholster* will apply to every claim herein to which the discovery pertains.

At the very outset, the pleadings, per petitioner's pending motion and this order, will have been amended subsequent to the parties' arguments on the second discovery motion. Slaughter presents new claims in the second amended petition that do not appear to have been exhausted and decided on the merits by the state courts at this point, including *Brady-Giglio* and *Napue* claims. As to Slaughter's new claims, it has not been definitively determined as yet, *inter alia*, (a) whether the new claims will relate back to timely claims and/or otherwise be timely based on other arguments; (b) whether a stay for exhaustion may be warranted; (c) during any such stay how the state courts might rule

---

[3] Contrary to respondents' suggestion (see ECF No. 46, at 2-3), neither Rule 6(a) nor *Bracy* were abrogated by AEDPA and, *inter alia*, its exhaustion requirement. Moreover, the exhaustion requirement long predates AEDPA. *See, e.g., Ex parte Hawk*, 321 U.S. 114, 116-17 (1944). The *Bracy* Court no doubt was well aware at the time of its decision both of the existence of the long-established exhaustion doctrine and of the prospect that federal discovery could render a theretofore exhausted claim unexhausted.

4

on such claims and/or other claims; and (d) whether the claims may be procedurally barred under state law and whether Slaughter can overcome any such procedural default in federal court.

*Pinholster* does not bar consideration of evidence *dehors* the state record presented by a petitioner for a purpose other than directly challenging a state court adjudication on the merits. *See, e.g., Detrich v. Ryan*, 740 F.3d 1237, 1247 (9th Cir. 2013) (*en banc*) (presentation of evidence to overcome a procedural default by establishing cause based on inadequate assistance of post-conviction counsel did not constitute presentation of evidence on the merits of a claim). *Pinholster* thus does not bar the consideration of evidence outside the state court record to determine whether a petitioner can demonstrate equitable tolling or another basis to overcome the federal time-bar, whether he can demonstrate good cause for a stay, and/or whether he can overcome a procedural default. Moreover, where a claim has been procedurally defaulted or remains unexhausted in the state courts, the claim has not been adjudicated on the merits in a state-court proceeding in any event. *See, e.g., id.* (procedurally defaulted claim had not been adjudicated on the merits); *see also Rodney v. Filson*, ___ F.3d ___, 2019 WL 985885 (9th Cir., March 1, 2019) (similar); *Gentry v. Sinclair*, 705 F.3d 884, 896 (9th Cir. 2013) (similar).

Applying *Pinholster* to bar discovery pertaining to a claim that has not yet been adjudicated on the merits by the state courts and which conceivably never may be adjudicated on the merits by those courts thus makes no sense. First, the evidence obtained in discovery can be used for a multitude of possible purposes that are not prohibited by *Pinholster*. Second, if the claim ultimately is procedurally barred under state law but the petitioner overcomes the procedural default in federal court, then *Pinholster* will have no application to the claim because it will not have been adjudicated on the merits by a state court.

Similarly, it has not yet been definitively determined at this point whether new allegations in the second amended petition and/or new evidence will fundamentally alter

5

and/or significantly strengthen previously exhausted claims that were decided on the merits in state court and thereby render them unexhausted.[4] As to any such claims, *Pinholster* similarly will not bar consideration of evidence outside the state court record with regard to any timeliness, stay, and/or procedural default issues. The Ninth Circuit has recognized that evidence developed during federal discovery potentially may lead to a previously-exhausted claim becoming unexhausted and further lead to a stay so that the state courts may be afforded an opportunity to address the altered or strengthened new claim in the first instance. *See Gonzalez v. Wong*, 667 F.3d 985, 971-72 & 978-80 (9th Cir. 2011). If the state courts ultimately, for example, were to find the claim procedurally barred and the petitioner succeeded in overcoming the procedural default in federal court, then such a new claim then also would not be subject to *Pinholster*.

Finally, even as to claims that clearly have been both exhausted and adjudicated on the merits by the state courts, it is not a foregone conclusion that the claims ultimately in fact will withstand deferential review under § 2254(d) on a federal court review restricted to the state court record. For example, a state court decision may apply a rule that is contrary to clearly established federal law as determined by the United States Supreme Court. In that circumstance, the claim then will be reviewed *de novo* on the merits by the federal court. *Pinholster* clearly would have no application during such a *de novo* review following an initial failure of the claim to withstand deferential review under AEDPA.

There may well be cases where it will be abundantly clear at the time of a discovery motion both that: (a) the requested discovery will not pertain to any other nonprohibited uses such as for establishing a basis for equitable tolling, good cause for a stay, or cause and prejudice to overcome a procedural default; and (b) all claims related to the requested discovery necessarily will be subject to the rule in *Pinholster* if and when the federal court reaches the merits, with no possibility of instead *de novo* review on the merits.

This is not such a case, however.

---

[4] *See generally Dickens v. Ryan*, 740 F.3d 1302, 1317 (9th Cir. 2014) (*en banc*).

Rather, in the context of this specific case, to say that respondents have put the cart before the horse in seeking to apply *Pinholster* as a threshold limitation on permissible discovery is an understatement. *Pinholster* does not categorically prohibit all federal habeas discovery, particularly where potentially credible evidence of alleged withholding of material exculpatory evidence and/or use of false testimony is involved. The Court makes no definitive holding at this juncture as to any factual or legal issue in this case. But neither AEDPA nor justice countenance a federal court turning a wholly deaf ear to such possible evidence from the very outset, subject to, *inter alia*, the exhaustion requirement. *Cf. Gonzalez*, 667 F.3d at 972 ("Because it appears to us that [the discovery] materials strengthen Gonzales's *Brady* claim to the point that his argument would be potentially meritorious -- that is, that a reasonable state court might be persuaded to grant relief on that claim -- it is not appropriate for us to ignore those materials.") Slaughter has demonstrated good cause for the discovery sought under Rule 6(a), and nothing in *Pinholster* overrides that showing of good cause in this particular case. There will be a time to conclusively apply the law to the facts adduced, in one fashion or another. However, petitioner in the meantime has established good cause to first develop the facts that potentially may be considered in this case, to one extent or another.

The Court thus is unpersuaded by respondents' attempt to rehash an argument that it rejected in the prior order and as to which respondents did not seasonably seek reconsideration.

Respondents otherwise advance no other argument seeking to establish that the discovery should not be allowed. Respondents suggest only, as discussed further below, that the scope of the discovery should be limited.

The Court accordingly holds on the record and argument presented that petitioner has established good cause to pursue the discovery sought.

Regarding scope of the discovery, respondents suggest that petitioner has not demonstrated "why interrogatories are not a more expedient way to accomplish the

necessary discovery." (ECF No. 46, at 4.) Respondents cite no caselaw or rule requiring that a party seeking to take a discovery deposition must establish in the first instance that the deposition sought is more expedient than interrogatories. That is, interrogatories constitute one of many discovery methods, including depositions, that a party generally may pursue, not a presumptively preferential method that must be pursued in lieu of other methods unless the requesting party first shows specific good cause.

In any event, even if the Court were to assume *arguendo* also that DiGiacomo and/or a related person or entity is a party to whom interrogatories can be directed, the Court is not persuaded by respondents' one-sentence argument that Slaughter should be limited instead to interrogatories. The most direct and expedient method to obtain the discovery sought is by examining DiGiacomo directly under oath. The Court certainly is not going to have the matter potentially strung out by discovery disputes over objections to interrogatories and/or the adequacy of responses to interrogatories. DiGiacomo would appear from the parties' arguments to be an experienced prosecutor. He should be able to respond under oath to direct examination without the intermediation of attorneys instead preparing responses and/or objections to interrogatories.

Respondents further urge, in their argument on scope, that: (a) Slaughter "fails to demonstrate how the deposition of the prosecutor advances a claim that the defense counsel failed to ask questions of witnesses about the second line up, or further impeachment of Detective Prieto, who apparently was unable to testify at trial," and (b) Slaughter "also fails to demonstrate how defense counsel can be ineffective for failing to ask questions based upon answers obtained almost a decade after the prosecution." (ECF No. 46, at 4.) Even within the context of the ineffective-assistance claims, the Court is not sanguine that the discovery sought has no potential relevance, including as to the prejudice element. The Court will not predetermine the scope of the deposition inquiry by anticipatory rulings as to whether the prosecutor's possible testimony -- and/or other evidence -- might establish also deficient performance by defense counsel on the ineffective-assistance claims. The evidence sought further clearly would appear to be

relevant to multiple other claims now presented, including as to the new *Brady-Giglio* and *Napue* claims that are not based upon alleged ineffective assistance of counsel.

In short, the Court sees no utility in confining the scope of examination by advisory rulings as to how specific evidence ultimately may or may not impact specific claims.

The second motion for discovery therefore will be granted.

IT IS THEREFORE ORDERED that petitioner's second motion for discovery (ECF No. 40) is GRANTED and that petitioner is granted leave to take the discovery deposition of Marc DiGiacomo within thirty (30) days of entry of this order, subject to reasonable request for extension of time to schedule the deposition.

IT IS FURTHER ORDERED that the certification requirements of Rules 26(c)(1) and 37(a)(1) of the Federal Rules of Civil Procedure and Local Rule LR 26-7 apply to any disputes regarding the discovery allowed. The parties shall confer and endeavor in good faith to resolve any discovery disputes, and they shall seek court intervention only as a last resort. All applicable discovery sanction provisions of Rules 26 through 37 further shall apply. Any discovery matters in this habeas case, including any emergency discovery disputes under Local Rule LR 26-7(d), will be handled by the Presiding District Judge rather than the Magistrate Judge.

IT IS FURTHER ORDERED that petitioner's motion for leave to file a second amended petition (ECF No. 50) is GRANTED and that the second amended petition shall be filed. No response to the pleading is required at this time.

IT IS FURTHER ORDERED that: (1) within sixty (60) days from the date of the deposition, petitioner shall file any further motions seeking any further relief regarding the pleadings or a notice that such further relief is not then being sought;[5] and (2) if such a notice is filed, respondents then shall file a response to the second amended petition within sixty (60) days of service of the notice, with any in turn responsive filing by petitioner

---

[5] The Court assumes that an expedited transcript will be sought. The sixty-day period allows for the possibility that the witness could reserve the right to read and sign within thirty days per Rule 30(e). Petitioner of course need not wait the full sixty days to proceed if the deposition is finalized more quickly. The Court would prefer to move forward with as much alacrity as possible.

9

then to follow within thirty (30) days of service.  If petitioner instead files a motion for further relief regarding the pleadings, the order addressing that motion will set the remaining schedule.  All affirmative defenses to be raised by respondents must be raised in the initial response.  Successive motions to dismiss will not be entertained for affirmative defenses that can be anticipated at the time of the initial response.

DATED: March 29, 2019.

_____
ROBERT C. JONES
United States District Judge