# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

RICKIE SLAUGHTER,

                                    Petitioner,

v.

BRIAN WILLIAMS,[1] et al.,

                                    Respondents.

Case No. 3:16-cv-00721-RCJ-WGC

**ORDER**

Petitioner Rickie Slaughter, a Nevada prisoner, has filed a counseled fourth-amended petition for a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 91.) Currently before the Court is Respondents' motion to dismiss Slaughter's fourth-amended petition. (ECF No. 105.) In their motion to dismiss, Respondents argue that Slaughter's fourth-amended petition contains claims that are untimely, not cognizable, unexhausted, and/or procedurally barred. (*Id*.) For the reasons discussed below, the Court grants the motion to dismiss, in part.

## I.    FACTUAL AND PROCEDURAL HISTORY

In its order affirming Slaughter's judgment of conviction, the Nevada Supreme Court described the crime, as revealed by the evidence at Slaughter's trial, as follows:

> On June 26, 2004, appellant and his companion entered the home of Ivan Young and his family armed with guns and restrained Ivan, his wife, his 10-year-old son, and his 12-year-old nephew with electrical cords. The men repeatedly demanded money and drugs from Ivan and his wife. During the event, an acquaintance of Ivan's, Ryan John, was called over to Ivan's house by appellant as John was leaving his girlfriend's house. When John entered Ivan's garage, appellant forced him at gunpoint into the home and restrained him. Ivan's friend, Jermaun Means also arrived at Ivan's house and was forced into the home and restrained. Appellant and his companion took money and wallets from the victims and broke

---

[1] The state corrections department's inmate locator page states that Slaughter is incarcerated at High Desert State Prison. Brian Williams is the warden for that facility. At the end of this order, this Court direct the clerk to substitute Brian Williams as a respondent for Respondent Renee Baker under Federal Rule of Civil Procedure 25(d).

their cell phones. Appellant also took John's Wells Fargo Bank card, demanded the pin number, and threatened John if he provided the wrong pin number. During the robbery, appellant and his companion beat Ivan and John and appellant shot Ivan in the face. The State introduced a surveillance video from a 7-Eleven and testimony that John's Wells Fargo bank card had been used at an ATM in the 7-Eleven to withdraw $300 an hour after the crimes.

(ECF No. 26-7 at 2–3.)

In 2005, Slaughter pleaded guilty to attempted murder with the use of a deadly weapon (count 1), robbery with the use of a deadly weapon (count 2), first-degree kidnapping with substantial bodily harm (count 3), and first-degree kidnapping with the use of a deadly weapon (count 4). (ECF No. 16-19.) The state court sentenced Slaughter to two equal and consecutive terms of 90 to 240 months for count 1; two equal and consecutive terms of 72 to 180 months for count 2, to run concurrent with count l; life with the possibility of parole after 15 years for count 3, to run concurrent with the sentences for counts 1 and 2; and two equal and consecutive terms of life with the possibility of parole after 5 years for count 4, to run concurrent with the terms for counts 1, 2, and 3. (*Id.*)

Slaughter filed a state habeas petition, arguing, in part, that his plea was involuntary based on the promises that his sentence would permit his release in 15 years. (ECF No. 16-22.) The state court denied the petition, but on appeal, the Nevada Supreme Court affirmed in part, vacated in part, and remanded the matter, instructing the state court to hold an evidentiary hearing to determine whether Slaughter's plea was voluntary. (ECF No. 16-40.) After conducting an evidentiary hearing, the state court denied Slaughter's claim that his guilty plea was involuntarily entered, but ordered the Department of Corrections to parole Slaughter from sentences for the deadly weapon enhancements for counts 1, 2, and 4 at the same time as the sentences for the primary offenses for counts 1, 2, and 4 and the sentence imposed in count 3. (*See* ECF No. 17-18

at 3.) Slaughter appealed, and the Nevada Supreme Court reversed and remanded, finding, in part, that Slaughter's plea was involuntarily entered. (*Id.*)

Following the withdrawal of Slaughter's guilty plea, a jury trial was held. (*See* ECF No. 25-10.) The jury convicted Slaughter of conspiracy to commit kidnapping (count 1), conspiracy to commit robbery (count 2), attempted murder with the use of a deadly weapon (count 3), battery with the use of a deadly weapon (count 4), attempted robbery with the use of a deadly weapon (count 5), robbery with the use of a deadly weapon (count 6), burglary while in the possession of a firearm (count 7), burglary (count 8), first-degree kidnapping with the use of a deadly weapon causing substantial bodily harm (count 9), and five counts of first-degree kidnapping with the use of a deadly weapon (counts 10, 11, 12, 13, and 14). (ECF No. 25-10.) The state court sentenced Slaughter to 24 to 60 months for count 1, 24 to 60 months for count 2 to run consecutive to count 1, 60 to 180 months plus a consecutive 60 to 180 months for count 3 to run consecutive to count 2, 48 to 120 months plus a consecutive 48 to 120 months for count 5 to run concurrent with count 3, 48 to 120 months plus a consecutive 48 to 120 months for count 6 to run consecutive to count 3, 48 to 120 months for count 7 to run concurrent with count 6, 24 to 60 months for count 8 to run concurrent to count 7, life with the possibility of parole after 15 years plus a consecutive term of life with the possibility of parole after 15 years for count 9 to run consecutive to count 6, life with the possibility of parole after 5 years plus a consecutive term of life with the possibility of parole after 5 years for count 10 to run concurrent to count 9, life with the possibility of parole after 5 years plus a consecutive term of life with the possibility of parole after 5 years for count 11 to run concurrent with count 9, life with the possibility of parole after 5 years plus a consecutive term of life with the possibility of parole after 5 years for count 12 to run concurrent to count 9, life with the possibility of parole after 5 years plus a consecutive term of life with the possibility of parole

after 5 years for count 13 to run concurrent to count 9, and life with the possibility of parole after 5 years plus a consecutive term of life with the possibility of parole after 5 years for count 14 to run concurrent to count 9. (*Id*.) Slaughter appealed, and the Nevada Supreme Court affirmed on March 12, 2014. (ECF No. 26-7.)

Slaughter filed a *pro se* state habeas petition on March 25, 2015. (ECF No. 26-13.) The state court denied the petition on July 14, 2015. (ECF No. 27-1.) Slaughter appealed, and the Nevada Supreme Court affirmed on July 13, 2016. (ECF No. 27-13.)

Slaughter filed a *pro se* federal habeas petition and an amended counseled habeas petition on December 20, 2016, and August 2, 2017, respectively. (ECF Nos. 6, 14.) On November 20, 2017, this Court granted Slaughter's motion for leave to conduct discovery and for a court order to obtain documents and depositions. (ECF No. 31.) Thereafter, Slaughter filed his second amended petition and third amended petition on April 15, 2019, and January 23, 2020, respectively. (ECF Nos. 54, 64.) On September 22, 2020, this Court granted Slaughter's unopposed motion for stay pending exhaustion of his unexhausted claims in state court. (ECF No. 81.)

On November 20, 2018, Slaughter filed a state habeas petition. (ECF No. 84-1.) The state court denied the petition on April 9, 2019, and the Nevada Supreme Court affirmed the denial on October 15, 2020. (ECF Nos. 84-12, 84-26.) On March 27, 2020, Slaughter filed another state habeas petition. (ECF No. 84-20.) The state court denied this petition on February 8, 2021, and the Nevada Supreme Court affirmed the denial on February 17, 2022. (ECF Nos. 84-29, 84-35.)

On May 11, 2022, this Court reopened this case. (ECF No. 90.) Slaughter filed his fourth-amended federal habeas petition on May 12, 2022. (ECF No. 91.) In his fourth-amended petition, Slaughter raises the following grounds:

1. The victims' in-court identification stemmed from the State's use of an impermissibly suggestive photographic lineup.

2.      His trial counsel failed to introduce foundational evidence regarding his alibi.

3.      His trial counsel failed to fully cross examine and impeach the State's witnesses.

4.      His trial counsel failed to call additional witnesses to provide exculpatory testimony.

5.      His trial counsel failed to deliver on promises made during opening statements.

6.      His trial counsel failed to object to various instances of prosecutorial misconduct.

7.      The State committed prosecutorial misconduct during closing arguments.

8.      The State presented hearsay evidence that denied him his ability to confront the witnesses against him.

9.      His appellate counsel failed to raise meritorious issues on direct appeal.

10.     The prosecution exercised a racially motivated peremptory challenge.

11.     The prosecution failed to disclose material exculpatory information, made relevant misrepresentations in open court, and failed to correct false testimony.

Respondents moved to dismiss the fourth-amended petition on January 18, 2023. (ECF No. 105.) Slaughter responded, and Respondents replied. (ECF Nos. 112, 115.)

## II.   LEGAL STANDARDS

### A.      Timeliness and relation back

A new claim in an amended petition that is filed after the expiration of the Antiterrorism and Effective Death Penalty Act ("AEDPA") one-year limitation period will be timely only if the new claim relates back to a claim in a timely-filed pleading on the basis that the claim arises out of "the same conduct, transaction or occurrence" as a claim in the timely pleading. *Mayle v. Felix*, 545 U.S. 644 (2005). In *Mayle*, the United States Supreme Court held that habeas claims in an amended petition do not arise out of "the same conduct, transaction or occurrence" as claims in the original petition merely because the claims all challenge the same trial, conviction, or sentence. *Id.* at 655–64. Rather, habeas claims asserted in an amended petition relate back "only when the claims added by amendment arise from the same core facts as the timely filed claims, and not when

the new claims depend upon events separate in 'both time and type' from the originally raised episodes." *Id.* at 657. In this regard, the reviewing court looks to "the existence of a common 'core of operative facts' uniting the original and newly asserted claims." *Id.* at 659. A claim that merely adds "a new legal theory tied to the same operative facts as those initially alleged" will relate back and be timely. *Id.* at 659 n.5; *Ha Van Nguyen v. Curry*, 736 F.3d 1287, 1297 (9th Cir. 2013).

## B. Cognizable federal claims

AEDPA "places limitations on a federal court's power to grant a state prisoner's federal habeas petition." *Hurles v. Ryan*, 752 F.3d 768, 777 (9th Cir. 2014) (citing *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011)). When conducting habeas review, a federal court is limited to deciding whether a conviction violates the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). Unless an issue of federal constitutional or statutory law is implicated by the facts presented, the claim is not cognizable in federal habeas. *McGuire*, 502 U.S. at 68.

Federal habeas relief is unavailable "for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). Alleged errors in the interpretation or application of state law do not warrant habeas relief. *Hubbart v. Knapp*, 379 F.3d 773, 779–80 (9th Cir. 2004). A petitioner "cannot, merely by injecting a federal question into an action that asserts it is plainly a state law claim, transform the action into one arising under federal law." *Caterpillar v. Williams*, 482 U.S. 386, 399 (1987); *accord Poland v. Stewart*, 169 F.3d 573, 584 (9th Cir. 1999).

## C. Exhaustion

A state prisoner first must exhaust state court remedies on a habeas claim before presenting that claim to the federal courts. 28 U.S.C. § 2254(b)(1)(A). This exhaustion requirement ensures that the state courts, as a matter of comity, will have the first opportunity to address and correct

alleged violations of federal constitutional guarantees. *Coleman v. Thompson*, 501 U.S. 722, 730–31 (1991). "A petitioner has exhausted his federal claims when he has fully and fairly presented them to the state courts." *Woods v. Sinclair*, 764 F.3d 1109, 1129 (9th Cir. 2014) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 844–45 (1999) ("Section 2254(c) requires only that state prisoners give state courts a *fair* opportunity to act on their claims.")).

A petitioner must present the substance of his claim to the state courts, and the claim presented to the state courts must be the substantial equivalent of the claim presented to the federal court. *Picard v. Connor*, 404 U.S. 270, 278 (1971). The state courts have been afforded a sufficient opportunity to hear an issue when the petitioner has presented the state court with the issue's factual and legal basis. *Weaver v. Thompson*, 197 F.3d 359, 364 (9th Cir. 1999); *see also Scott v. Schriro*, 567 F.3d 573, 582–83 (9th Cir. 2009) ("Full and fair presentation additionally requires a petitioner to present the substance of his claim to the state courts, including a reference to a federal constitutional guarantee and a statement of facts that entitle the petitioner to relief."). A petitioner may reformulate his claims so long as the substance of his argument remains the same. *Picard*, 404 U.S. at 277–78.

### D.    Procedural default

Federal courts are barred from considering a state prisoner's habeas claim if the state courts denied his claim pursuant to an independent and adequate state procedural rule. *Edwards v. Carpenter*, 529 U.S. 446, 454–55 (2000). "The Ninth Circuit has elaborated that a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default." *Collier v. Bayer*, 408 F.3d 1279, 1284 (9th Cir. 2005) (internal quotation marks omitted). "If a state procedural rule is not well-established before a petitioner supposedly breaks the rule, then the rule cannot prevent federal review of the petitioner's federal claims." *Id.*

When a prisoner "procedurally defaults" a federal claim, judicial review is barred unless he can show either: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law," or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. To demonstrate cause, a petitioner must show that some external and objective factor impeded his efforts to comply with the state's procedural rule. *Maples v. Thomas*, 565 U.S. 266, 280–81 (2012). Ignorance or inadvertence does not constitute cause. *Murray v. Carrier*, 477 U.S. 478, 486–87 (1986). To show prejudice, a petitioner bears the burden of showing not merely that the error created a possibility of prejudice, but that the error worked to his actual and substantial disadvantage, infecting the entire proceeding with constitutional error. *Id*. at 494; *Bradford v. Davis*, 923 F.3d 599, 613 (9th Cir. 2019).

## III.   DISCUSSION

First, Respondents argue that grounds 1(b)(5-6), 2(a-c), 3(a), 4(a), 6, 8, and 9(c) of Slaughter's fourth-amended petition do not relate back to his timely-filed *pro se* federal petition, so they should be dismissed as untimely. (ECF No. 105 at 10.) Second, Respondents argue that Slaughter failed to properly identify whether he exhausted his claims. (*Id*. at 15.) Third, Respondents argue that grounds 1(b)(5-7), 1(c), 2(a-d), 3(a), 3(d), 4(a), 5, 6, 7(a-e), 9(c), 10 and 11 are procedurally defaulted. (*Id*. at 17.) And fourth, Respondents argue that ground 8 is not cognizable. (*Id*. at 21.) This Court will discuss each of these arguments in turn.

### A.   Timeliness and relation back

Slaughter does not dispute that the grounds in his fourth-amended petition are untimely; rather, he argues that the grounds relate back to his timely original petition. (ECF No. 112 at 2.)

Respondents argue that ground 1(b)(5-6) of the fourth-amended petition does not relate back to the original petition. (ECF No. 105 at 12.) In ground 1, Slaughter alleges that the victims'

in-court identifications of him stemmed from the State's use of an impermissibly suggestive photographic lineup. (ECF No. 91 at 18.) Slaughter then uses the following headers within ground 1: the lineup was suggestive, the victims' identifications were not otherwise reliable, and the error was not harmless. (*Id*. at 19–24.) Slaughter explains that these headers were included for "reader convenience, not because [he] is attempting to raise multiple subclaims under" ground 1. (ECF No. 112 at 3.) This Court accepts Slaughter's explanation. And because ground 1 of Slaughter's original petition included a common core of operative facts with ground 1 of Slaughter's fourth-amended petition (*see* ECF No. 6 at 3 (original petition ground 1, which asserted that "[t]he state court's failure to exclude the unreliable identification testimony and evidence which originated from the taint of unnecessarily suggestive photo lineups from Slaughter's trial violated his due process rights)), ground 1 of the fourth-amended petition relates back and is timely.

Respondents argue that grounds 2(a-c) of the fourth-amended petition do not relate back to the original petition. (ECF No. 105 at 12.) In ground 2, Slaughter alleges that his trial counsel failed to introduce foundational evidence regarding his alibi. (ECF No. 91 at 25.) Slaughter then includes the following sub grounds: (a) counsel should have subpoenaed the 911 records, (b) counsel should have proven how long it took Means to call 911, (c) counsel should have established the time it took to drive between the crime scene and his girlfriend's workplace, (d) counsel should have impeached his girlfriend's boss's testimony, and (e) counsel should not have called Westbrook. (*Id*. at 26–31.) Respondents argue that grounds 2(a-c) include the following new facts that were not included within his original petition: counsel submitted a PowerPoint showing the time of the 911 call, the defense's failure to introduce evidence about the timing of the 911 call shifted the timeframe in the prosecution's favor by 8 to 11 minutes, Means called police at 7:11 p.m. and told the 911 dispatcher that the incident occurred five minutes prior, and counsel failed

to lay an evidentiary foundation regarding drive times. (ECF No. 105 at 13.) Slaughter rebuts that these additional details merely add support for the subclaims in his original petition.[2] (ECF No. 112 at 4.) This Court agrees. In his original petition, Slaughter argued, *inter alia*, that his "trial counsel [should have] subpoena[ed] and elicit[ed] testimony from [a] 911 records custodian about the time in which Means 911 call was placed and received by dispatch," "trial counsel also failed to develop and present evidence regarding the timing of Means' 911 call" which was made only a few seconds after the perpetrators left, and his counsel failed to investigate "the distance between Young's home and Slaughter's girlfriend's work place" which was "approximately 8 ½ miles . . . on the complete opposite side of town." (ECF No. 6 at 24, 27–28.) Because (1) these allegations in Slaughter's original petition include a common core of operative facts with ground 2(a-c) of his fourth-amended petition and (2) the additional details outlined above merely add support, grounds 2(a-c) of the fourth-amended petition relate back and are timely.

Respondents argue that ground 3(a) of the fourth-amended petition does not relate back to the original petition. (ECF No. 105 at 13.) In ground 3(a), Slaughter alleges that his trial counsel failed to fully cross examine and impeach the victims regarding the second photo lineup. (ECF No. 91 at 32–33.) Respondents contend that Slaughter added the following facts in his fourth-amended petition which were not in his original petition: the prosecution and the trial court agreeing the topic would be suitable for cross-examination and counsel's midtrial request for a jury instruction on the issue. (ECF No. 105 at 13.) Slaughter rebuts that these additional details

---

[2]Alternatively, Slaughter alleges that ground 2(a) enjoys a delayed accrual date under § 2244(d)(1)(D). (ECF No. 112 at 6.) Because this Court determines that ground 2(a) is timely, it does not consider this alternative argument.

merely add additional context.[3] (ECF No. 112 at 4.) This Court agrees. In his original petition, Slaughter argued that his "counsel failed to examine these witnesses about the 2nd set of photo lineups, even after the court suggested that counsel ask the witnesses about the photo lineups when the court denied the defense's motion to dismiss midtrial." (ECF No. 6 at 32.) Because (1) this allegation in Slaughter's original petition includes a common core of operative facts with ground 3(a) of his fourth-amended petition and (2) the additional details outlined above merely add context, ground 3(a) of the fourth-amended petition relates back and is timely.

Respondents argue that ground 4(a) of the fourth-amended petition does not relate back to the original petition. (ECF No. 105 at 13.) In ground 4(a), Slaughter alleges that his trial counsel failed to call Detective Jesus Prieto to provide exculpatory testimony. (ECF No. 91 at 38–39.) Respondents contend that in ground 4(a) Slaughter now raises several new facts about Detective Prieto's alleged wrongful basis for obtaining a search warrant against Slaughter such that he now presents an entirely new theory than the one presented in his original petition for why his counsel should have called Detective Prieto as a witness. (ECF No. 105 at 13–14.) Slaughter rebuts that these additional facts merely add additional context.[4] (ECF No. 112 at 4.) This Court agrees. In his original petition, Slaughter argued that his "trial counsel failed to subpoena and elicit critical testimony from crucial witnesses [including] Detective Prieto." (ECF No. 6 at 22.) Slaughter then explained that his trial counsel could have confronted Detective Prieto about various issues in his investigation. (*Id*. at 22–25.) Because this allegation in Slaughter's original petition includes a

---

[3]Alternatively, Slaughter alleges that ground 3(a) enjoys a delayed accrual date under § 2244(d)(1)(D). (ECF No. 112 at 6.) Because this Court determines that ground 3(a) is timely, it does not consider this alternative argument.

[4]Alternatively, Slaughter alleges that ground 4(a) enjoys a delayed accrual date under § 2244(d)(1)(D). (ECF No. 112 at 6.) Because this Court determines that ground 4(a) is timely, it does not consider this alternative argument.

common core of operative facts with ground 4(a) of his fourth-amended petition—namely, that his

trial counsel should have called Detective Prieto to provide beneficial testimony for the defense—

ground 4(a) of the fourth-amended petition relates back and is timely.

Respondents argue that ground 6 of the fourth-amended petition does not relate back to the

original petition. (ECF No. 105 at 14.) In ground 6, Slaughter alleges that his trial counsel failed

to object to the following incidents of prosecutorial misconduct: (a) the prosecutor inappropriately

suggested that Slaughter had attempted to fake a Jamaican accent, (b) the prosecutor

inappropriately said that there was "no question" that Slaughter "put a gun to" Young's face, (c)

the prosecutor inappropriately vouched for Arbuckle, (d) the prosecutor inappropriately suggested

Slaughter knew the time of the crime so he must have been there, (e) the prosecutor inappropriately

suggested Slaughter's use of an alibi defense illustrated his guilt, (f) the prosecutor inappropriately

stated "you shoot a guy in the face, you don't just get 10 years," and (g) the prosecutor

inappropriately told the jury "if you are doing the job" it would convict. (ECF No. 91 at 46–50.)

Within ground 6, Slaughter also alleges the following:

> To be clear, Mr. Slaughter's trial attorneys were ineffective in numerous respects. They were ineffective for all the specific reasons explained in this Ground and Grounds Two through Six. Had his attorneys performed effectively in *any* of these numerous respects, there would've been a reasonable probability of a different outcome. And had his attorneys performed effectively in *all* the ways described in this Ground and Grounds Two through Six, there would've been an overwhelming likelihood of a different outcome. For all the reasons explained in this amended petition, both individually and cumulatively, Mr. Slaughter received ineffective assistance of counsel. He is therefore entitled to a new trial.

(*Id*. at 47.) Respondents contend that ground 6's claim of cumulative error that relies on the entire

petition does not share a common core of operative facts with the claims in his original petition.

(ECF No. 105 at 14.) Because this Court finds that Slaughter's ineffective assistance of counsel

claims are timely, his cumulative prejudice argument in ground 6 is also timely.

Respondents argue that ground 8 of the fourth-amended petition does not relate back to the original petition. (ECF No. 105 at 14.) In ground 8, Slaughter alleges that the State presented hearsay evidence that denied him his ability to confront the witnesses against him. (ECF No. 91 at 51.) Specifically, Slaughter alleges that the State introduced into evidence a surveillance videotape from a 7-Eleven store, which allegedly showed Slaughter using the ATM card he stole. (*Id.*) However, the only evidence that the State presented that tended to prove that conclusion was hearsay evidence: namely, John's testimony that after the robbery, he called his bank to report the stolen card, and someone at the bank told him his card had been used at a 7-Eleven. (*Id.* at 51–52.) Respondents argue that Slaughter never mentioned this phone call—the alleged hearsay evidence—in his original petition. (ECF No. 105 at 14.) This Court agrees. Even if Slaughter argued that a confrontational clause violation occurred in a different context within his original petition, he never mentioned the phone call between Johns and the person at the bank. As such, ground 8 of the fourth-amended petition does not relate back to the original petition and is untimely.

Respondents argue that ground 9(c) of the fourth-amended petition does not relate back to the original petition. (ECF No. 105 at 14.) In ground 9(c), Slaughter argues that his appellate counsel failed to litigate the prosecutorial misconduct issues, which are discussed within ground 6 and 7 of his fourth-amended petition, in his direct appeal. (ECF No. 91 at 54.) Respondents contend that while Slaughter raised many of the facts pertaining to the various instances of prosecutorial misconduct in his original petition, he never addressed any facts implicating his appellate counsel's failure to raise such claims. (ECF No. 105 at 14.) This Court is unpersuaded. The governing principle is that a claim based upon a different legal theory that is tied to the same core of operative facts relates back to the prior claim. *Mayle*, 545 U.S. at 659 n.5. Although the ineffective-

assistance-of-appellate-counsel claim presents a different legal theory, it is tied to the same core of operative facts as the original substantive claim. *See, e.g., Ha Van Nguyen v. Curry*, 736 F.3d 1287, 1296–97 (9th Cir. 2013) (amended claim of ineffective assistance of counsel for failing to raise double jeopardy claim related back to substantive claim in original petition). Ground 9(c) of the fourth-amended petition relates back and is timely.

Slaughter argues that he can counteract a limitations defense by establishing actual innocence. (ECF No. 112 at 7.) "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar [or] expiration of the statute of limitations." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). In this regard, "actual innocence" means actual factual innocence, not mere legal insufficiency. *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992). However, "where post-conviction evidence casts doubt on the conviction by undercutting the reliability of the proof of guilt, but not by affirmatively proving innocence, that can be enough to pass through the *Schlup* gateway to allow consideration of otherwise barred claims." *Lee v. Lampert*, 653 F.3d 929, 938 (9th Cir. 2011) (internal quotation omitted). Nevertheless, the Supreme Court has emphasized that "tenable actual innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggin*, 569 U.S. at 386 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).

"To be credible, [an actual innocence] claim requires petitioner to support his allegations of constitutional error with *new reliable evidence*—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324 (emphasis added). To be "new" for purposes of an actual innocence claim, the evidence need only be "newly presented," *i.e.*, reliable evidence "that was not presented at

trial," as opposed to "newly discovered" and thus previously unavailable. *Griffin v. Johnson*, 350 F.3d 956, 961-63 (9th Cir. 2003). Actual innocence review incorporates "all evidence," including (1) evidence alleged to have been improperly admitted (but with due regard to its questionable reliability), (2) evidence tenably claimed to have been wrongfully excluded by the trial court, (3) evidence the defense did not present to the jury at trial, or (5) evidence that became available only after the trial. *Id*. (citing *Schlup*, 513 U.S. at 327-28).

Newly presented evidence may call into question the credibility of trial witnesses, potentially requiring credibility assessments on federal habeas review. *See Schlup*, 513 U.S. at 330; *Stewart v. Cate*, 757 F.3d 929, 941 (9th Cir. 2014). However, a *Schlup* claim attempting to discredit prosecution witnesses provides less support for actual innocence than affirmatively presenting new exculpatory evidence. *See, e.g., Lee*, 653 F.3d at 94345 (holding that a reasonable juror may have rejected an expert's speculation and, even assuming a police report constituted new evidence, jurors may still have convicted the petitioner given all they heard at trial); *Sistrunk v. Armenakis*, 292 F.3d 669, 675-76 (9th Cir. 2002) (finding that excluded evidence had "some impeachment value" but was "far from conclusive," and thus did not undermine confidence in the conviction).

To support his actual innocence argument, Slaughter argues that he had a concrete alibi: he was picking up his girlfriend from work. (ECF No. 112 at 8.) Slaughter argues that new evidence shows that the perpetrators in this case left the crime scene at 7:08 p.m. instead of around 7:00 p.m., it took 20 to 30 minutes to get to his girlfriend's workplace, and he arrived at his girlfriend's workplace at 7:15 p.m., not around 7:30 p.m. as was presented at trial. (*Id*. at 8–9.) Slaughter also argues that new evidence shows that the witnesses could not identify him in a second police photo lineup. (*Id*. at 9–10.) Slaughter argues that these new pieces of evidence, considered collectively

1 with the prosecution's allegedly weak evidence, would not have resulted in a jury conviction. (*Id.*

2 at 10–11.)[5] This Court will discuss each of these pieces of new evidence in turn.

3    Regarding Slaughter's first contention regarding the timeline between when the

4 perpetrators left and his arrival at his girlfriend's workplace, Slaughter explains that "[n]ew

5 evidence demonstrates the culprits left the crime scene at 7:08 p.m." when "the jury was told they

6 left around 7:00 p.m." (ECF No. 112 at 8.) Slaughter also explains that "[n]ew evidence

7 demonstrates it would've taken 20 or 30 minutes to get from the crime scene to his girlfriend's

8

9 ——————————————————

[5]Notably, the Nevada Supreme Court rejected Slaughter's actual innocence argument:

> [Slaughter] argues the procedural bars should be excused to prevent a fundamental miscarriage of justice because he is actually innocent of the crimes. [Slaughter] claims new evidence, mainly the alleged *Brady* material set forth above, establishes a more solid alibi than was introduced at trial and demonstrates the victims' identifications were unreliable such "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Berry v. State*, 131 Nev. 957, 966, 363 P.3d 1148, 1154 (2015) (internal quotation marks omitted). While a colorable showing of actual innocence—factual innocence of the crime as opposed to legal insufficiency—may demonstrate a fundamental miscarriage of justice sufficient to overcome the procedural bars, *see Mitchell v. State*, 122 Nev. 1269, 1273–74, 149 P.3d 33, 36 (2006), we conclude [Slaughter] has not made this showing. The alleged new evidence of [Slaughter]'s alibi—that the perpetrators left the scene closer to 7:08 p.m. and not 7:00 p.m. and that Arbuckle called the police on [Slaughter]—does not demonstrate factual innocence when considering all the evidence produced at trial. And even incorporating new evidence that none of the victims identified [Slaughter] in a second lineup—a lineup prepared for an alleged accomplice—does not change that conclusion. In addition to three of the victims identifying [Slaughter] in court, [Slaughter]'s girlfriend's car, to which [Slaughter] had access, resembled the car described by witnesses, and law enforcement found two firearms and ammunition in the car consistent with evidence recorded at the crime scene. Surveillance footage shows [Slaughter] using a victim's ATM card and [Slaughter] made statements that indicated he was attempting to fabricate his alibi. In light of this evidence, the outcome of the second lineup and small variances in the time the 9-1-1 call was placed and the time [Slaughter] picked up his girlfriend would not have made it more likely than not that no reasonable juror would have convicted him.

(ECF No. 84-26 at 8–9.)

workplace" and "shows the girlfriend's boss previously told the police Mr. Slaughter arrived at about 7:15 p.m." even though he testified that Slaughter arrived at or after 7:30 p.m. (*Id.*) According to Slaughter, because the suspects left at about 7:08 p.m., and he arrived to pick his girlfriend up at 7:15 p.m., there is no way he is one of the perpetrators given that it would have taken him 20 minutes minimum to drive from the crime scene to his girlfriend's workplace. (*Id.* at 9.) However, according to Slaughter, the jury did not know these facts and was under the false impression that the suspects left the crime scene at about 7:00 p.m. and Slaughter picked his girlfriend up as late as 7:30 p.m. (*Id.*)

Although this new evidence may have strengthened Slaughter's alibi defense, it does not demonstrate that he is actually innocent. Slaughter represents that the 911 call came in at 7:11 p.m., and one minute and 38 second into that call, the victim "told the 911 dispatcher the incident occurred '*about* five . . . five minutes ago.'" (ECF No. 91 at 28 (citing ECF No. 41-7 at 1:38-1:40 (emphasis added).) The victim's statement here was an estimate, not definitive proof, that the perpetrators left at 7:08 p.m., rather than closer to 7:00 p.m. And regarding Slaughter's girlfriend's boss's inconsistent police interview statement and trial testimony about Slaughter's arrival time, this is again not definitive proof that Slaughter arrived at 7:15 p.m. rather than 7:30 p.m. As such, Slaughter provides, at most, evidence that he could have presented to strengthen his alibi. However, because the jury could have reasonably determined that Slaughter had time to get from the crime scene to his girlfriend's workplace between "about" five minutes before 7:12 p.m. and 7:30 p.m. (if the jury had relied on Slaughter's girlfriend's boss's sworn trial testimony and disregarded his police interview statement, which it could have reasonably done), he does not unequivocally demonstrate that he could not have committed the crimes.

And turning to Slaughter's second contention regarding the second photo lineup, Slaughter again provides, at most, evidence that he could have presented to cast doubt on the victims' identifications of him. He does not provide definitive evidence that he did not commit the crimes. Rather, he provides an argument—*i.e.*, that the first photo lineup and in-court identifications were unreliable in light of the second photo lineup in which the victims did not identify him—that the jury was free to reasonably disregard in finding that he was one of the perpetrators.

In sum, Slaughter fails to demonstrate actual innocence to excuse the untimeliness of ground 8 of his fourth-amended petition. As such, ground 8 is dismissed as being untimely.

### B.   Cognizable claims

Respondents argue that ground 8 is not cognizable in federal habeas.[6] (ECF No. 105.) In ground 8, Slaughter alleges that the State presented hearsay evidence that denied him his ability to confront the witnesses against him in violation of his rights under the Fifth, Sixth, and Fourteenth Amendments. (ECF No. 91 at 51.) Respondents argue that this is an issue of state law that Slaughter has attempted to mutate into a federal issue. (ECF No. 105 at 21.) Slaughter rebuts that ground 8 alleges a confrontation clause violation because the prosecution elicited testimonial hearsay. (ECF No. 112 at 28.) Because *Crawford v. Washington* is cited and implicated by the facts presented in ground 8 (*see* ECF No. 91 at 51–52), ground 8 is cognizable.

### C.   Exhaustion

Respondents argue that Slaughter fails to properly identify whether he has exhausted his claims. (ECF No. 105 at 15.) Respondents explain that the federal habeas rules and this district's local rules require a federal habeas petitioner to specify when, where, and how he exhausted his

---

[6]Although ground 8 has already been dismissed as being untimely, this Court discusses it here out of an abundance of caution.

claims on a claim-by-claim basis. (*Id.*) Respondents contend that because Slaughter failed to follow these rules, this Court should require him to comply with the rules, dismiss or strike his petition, or require him to file a more definite statement regarding exhaustion. (*Id.*) In response, Slaughter thoroughly outlined his statement regarding exhaustion for each ground in his fourth-amended petition. (*See* ECF No. 112 at 14–17.) As such, Respondents' exhaustion argument is moot.

### D.    Procedural default

Respondents argue that grounds 1(b)(5-7), 1(c), 2(a-d), 3(a), 3(d), 4(a), 5, 6, 7(a-e), 9(c), 10, and 11 are procedurally defaulted because the Nevada Supreme Court expressly relied upon independent and adequate state procedural bars when it affirmed the denial of Slaughter's second, third, and fourth state habeas petitions. (ECF No. 105 at 17.)

Respondents argue that Slaughter did not fairly present the facts or arguments of grounds 1(b)(5-7) and 1(c) in any non-procedurally-barred claim before the Nevada Supreme Court or Nevada Court of Appeals. (ECF No. 105 at 18.) As a reminder, in ground 1, Slaughter alleges that the victims' in-court identifications of him stemmed from the State's use of an impermissibly suggestive photographic lineup. (ECF No. 91 at 18.) And this Court has already accepted Slaughter's explanation that the headers used within ground 1 were not intended to break ground 1 into subclaims. As such, this Court analyzes whether ground 1 as a whole is procedurally defaulted. This Court finds that it is not. Slaughter presented this claim on direct appeal. (*See* ECF No. 26-7 at 3 (stating that "appellant argues that a suggestive pretrial photographic lineup impermissibly tainted in-court identifications, thereby violating his due process rights").) And the Nevada Supreme Court did not deny this claim based on a procedural bar. (*See id.* at 4 (concluding that the state court's finding that the photographic lineup was proper was not erroneous).) And this

Court rejects Respondents' contention that the facts and legal issues that Slaughter presents in ground 1 of his fourth-amended petition fundamentally alter the claim presented on direct appeal. Ground 1 is not procedurally defaulted.

Respondents argue that grounds 2(a), 2(c), and 2(d) are procedurally defaulted because even though Slaughter presented similar claims in his first state habeas petition, he fundamentally altered the claims in his fourth-amended petition. (ECF No. 105 at 19.) In grounds 2(a), 2(c), and 2(d), respectively, Slaughter alleges that his trial counsel failed to introduce foundational evidence regarding his alibi, including (a) subpoenaing the 911 records, (c) establishing the time it took to drive between the crime scene and Slaughter's girlfriend's workplace, and (d) impeaching Arbuckle's testimony. (ECF No. 91 at 25–31.) Slaughter argues that grounds 2(a), 2(c), and 2(d) were litigated in his first state habeas petition. (ECF No. 112 at 19.) This Court agrees. In his first state habeas petition, Slaughter alleged the following ineffective-assistance-of-trial-counsel claims: (1) his counsel failed to introduce evidence of Arbuckle's prior inconsistent statement, (2) his counsel "failed to subpoena and/or call the records custodians for 911 dispatch records . . . to testify regarding the actual time [the] 911 call was made which would have bolstered [his alibi] defense," and (3) his counsel "failed to call defense investigator Craig Retke to the stand to elicit testimony regarding the amount of time it would likely take a person to drive across the distance between the crime-scene and Mrs. Holly's workplace." (ECF No. 26-13 at 9–11, 38, 44.) And the Nevada Supreme Court did not deny these claims based on a procedural bar. (ECF No. 27-13 at 3 (concluding that Slaughter failed to demonstrate prejudice regarding his claims that his trial counsel failed to elicit testimony from Retke, failed to "present evidence regarding the timing of a 911 call," and failed to discover impeachment evidence regarding Arbuckle).) And this Court rejects Respondents' contention that the facts and legal issues that Slaughter presents in ground 2

of his fourth-amended petition fundamentally alter the claims presented during his first state habeas proceedings. Grounds 2(a), 2(c), and 2(d) are not procedurally defaulted.

Respondents argue that ground 3(a) is procedurally defaulted. (ECF No. 105 at 19.) In ground 3(a), Slaughter alleges that his trial counsel failed to ask the victims about the second photo lineup. (ECF No. 91 at 33.) Slaughter argues that ground 3(a) was litigated in his first state habeas petition. (ECF No. 112 at 19.) This Court agrees. In his first state habeas petition, Slaughter alleged that his trial counsel "failed to adequately cross-examine and impeach the State's eyewitnesses' identifications of" him with their "fail[ure] to identify [him] . . . from a 2nd photo lineup." (ECF No. 26-13 at 23.) And the Nevada Supreme Court did not deny this claim based on a procedural bar. (ECF No. 27-13 at 3 (concluding that Slaughter failed to demonstrate prejudice regarding his claim that his trial counsel failed to "adequately cross-examine the State's witnesses").) And this Court rejects Respondents' contention that the facts and legal issues that Slaughter presents in ground 3(a) of his fourth-amended petition fundamentally alter the claim presented during his first state habeas proceedings. Ground 3(a) is not procedurally defaulted.

Respondents argue that ground 4(a) is procedurally defaulted. (ECF No. 105 at 20.) In ground 4(a), Slaughter alleges that his trial counsel failed to call Detective Prieto. (ECF No. 91 at 39.) Slaughter argues that ground 4(a) was litigated in his first state habeas petition. (ECF No. 112 at 19.) This Court agrees. In his first state habeas petition, Slaughter alleged that his trial counsel "failed to subpoena and/or call Detective Jesus Prieto to testify as a witness at trial and elicit several key pieces of evidence that were critical to [his] defense, such as prior inconsistent witness statements, exculpatory photo lineup evidence, and evidence that impeached the integrity of the police investigation." (ECF No. 26-13 at 7.) And the Nevada Supreme Court did not deny this claim based on a procedural bar. (ECF No. 27-13 at 2–3 (concluding that Slaughter failed to

demonstrate prejudice regarding his claim that his trial counsel failed to "elicit testimony from Detective Jesus Prieto").) And this Court rejects Respondents' contention that the facts and legal issues that Slaughter presents in ground 4(a) of his fourth-amended petition fundamentally alter the claim presented during his first state habeas proceedings. Ground 4(a) is not procedurally defaulted.

Respondents argue that ground 5 is procedurally defaulted. (ECF No. 105 at 20.) In ground 5, Slaughter alleges that his trial counsel failed to deliver on promises made during opening statements. (ECF No. 91 at 45.) Slaughter argues that ground 5 was litigated in his first state habeas petition. (ECF No. 112 at 19–20.) This Court is unpersuaded. In his first state habeas petition, Slaughter alleged that his trial counsel "promised jurors in his opening statement that they would hear testimony from Ms. Waddy that the get away vehicle was a Pontiac Grand Am." (ECF No. 26-13 at 33–34.) However, this argument was only included as a prejudice argument within a different claim: his trial counsel's failed to subpoena and call witness Waddy. (*Id*. at 33.) Rather, it was not until a later state habeas proceeding that Slaughter first alleged the claim at hand: "Ground Five: Trial cousin failed to deliver on promises made during opening statements." (ECF No. 84-1 at 58.) And the Nevada Supreme Court denied this claim based on a procedural bar. (*See* ECF No. 84-26 at (affirming the denial of Slaughter's state habeas petition because it was untimely, successive, and an abuse of the writ).) Ground 5 is procedurally defaulted.

Respondents argue that ground 7(e) is procedurally defaulted. (ECF No. 105 at 21.) In ground 7(e), Slaughter alleges that the State committed prosecutorial misconduct during closing arguments by inappropriately suggesting that Slaughter's use of an alibi defense illustrated his guilt. (ECF No. 91 at 51.) Slaughter argues that ground 7(e) was litigated during his direct appeal. (ECF No. 112 at 20.) This Court agrees. Slaughter presented this claim on direct appeal. (*See* ECF

25-23 at 35.) And the Nevada Supreme Court did not deny this claim based on a procedural bar. (*See* ECF No. 26-7 at 6 (determining that the following comment by the prosecutor was "a permissible response to evidence [Slaughter] presented" about his alibi: "if [Slaughter] was not doing anything wrong at the time of the crimes, 'he wouldn't need anybody to come in here and lie for him. That alone would make him guilty'").) And this Court rejects Respondents' contention that the facts and legal issues that Slaughter presents in ground 7(e) of his fourth-amended petition fundamentally alter the claim presented on direct appeal. Ground 7(e) is not procedurally defaulted.

Respondents argue that ground 11 is procedurally defaulted. (ECF No. 105 at 17–18.) In ground 11, citing *Brady*[7] and *Napue*[8], Slaughter alleges that the prosecutors failed to disclose material exculpatory information, made relevant misrepresentations in open court, and failed to correct false testimony. (ECF No. 91 at 55.) Specifically, Slaughter alleges (a) the prosecution did not disclose evidence regarding Means's 911 call and misrepresented the timing, (b) the prosecution failed to turn over information about the second photo lineup and misrepresented its outcome, and (c) the prosecution failed to turn over impeachment information about Arbuckle. (*Id.* at 55–67.) Slaughter contends that ground 11 is not defaulted because the Nevada Supreme Court's analysis of ground 11 depended on federal law. (ECF No. 112 at 20 (citing ECF No. 84-26 at 3–8).) This Court agrees. *See Cooper v. Neven*, 641 F.3d 322, 332–33 (9th Cir. 2011) (concluding that the application of Nevada's timeliness and successiveness bars to the petitioner's *Brady* claims was not "independent" because "the Nevada Supreme Court explicitly relied on its federal *Brady* analysis as controlling the outcome of its state procedural default analysis). The Nevada Supreme

---

[7] *Brady v. Maryland*, 373 U.S. 83, (1963).

[8] *Napue v. Illinois*, 360 U.S. 264, 266 (1959).

Court's decision in this case relied on a *Brady* analysis to determine that Slaughter could not establish cause and prejudice to excuse the default of the same *Brady* claims he now raises before this Court. (ECF No. 84-26 at 3–8.) Accordingly, based on *Cooper*, ground 11 is not procedurally defaulted, and this Court need not address Slaughter's alternative argument that he can overcome the default based on *Brady* and/or *Napue* violations.

Respondents also contend that grounds 2(b), 3(d), 6, 7(a-d), 9(c), and 10 are procedurally defaulted. (ECF No. 105 at 17–18.) Slaughter does not appear to dispute this contention. (*See* ECF No. 112 at 18–21.) Instead, Slaughter alleges that he can overcome any procedural default. (*Id*. at 21.) In this regard, Slaughter alleges that he is actually innocent and/or he can show cause and prejudice. (*Id*. at 21–26.) This Court has already considered and rejected Slaughter's actual innocence argument *supra*. And regarding showing cause and prejudice, Slaughter alleges that he can overcome the default of certain claims based on his trial counsel's ineffectiveness, his appellate counsel's ineffectiveness, and/or the lack of adequate post-conviction counsel. (*Id*. at 21.)

Slaughter contends that he can overcome any procedural default of his ineffective assistance of trial counsel claims based on *Martinez v. Ryan*. (ECF No. 112 at 23–25.) Slaughter's procedurally defaulted ineffective assistance of trial counsel claims include grounds 2(b), 3(d), 5, and 6(a-g). "Generally, post-conviction counsel's ineffectiveness does not qualify as cause to excuse a procedural default." *Ramirez v. Ryan*, 937 F.3d 1230, 1241 (9th Cir. 2019) (citing *Coleman v. Thompson*, 501 U.S. 722, 754-55 (1991)). However, in *Martinez*, the Supreme Court created a narrow exception to the general rule that errors of post-conviction counsel cannot provide cause for a procedural default. 566 U.S. at 16-17. "Under *Martinez*, the procedural default of a substantial claim of ineffective assistance of trial counsel is excused, if state law requires that all claims be brought in the initial collateral review proceeding . . . and if in that proceeding there was

24

no counsel or counsel was ineffective." *Id*. (citing *Martinez*, 566 U.S. at 17). But *Martinez* cannot excuse the procedural default of a substantive claim of trial-court error, appellate-level ineffective assistance of counsel claims, or "attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts." 566 U.S. at 16-7; *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017). To establish cause and prejudice to excuse the procedural default of a trial-level ineffective assistance of counsel claim under *Martinez*, a petitioner must show that: (1) post-conviction counsel performed deficiently; (2) there was a reasonable probability that, absent the deficient performance, the result of the post-conviction proceedings would have been different, and (3) the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit. *Ramirez*, 937 F.3d at 1242 (internal quotation omitted).

Slaughter demonstrates cause under *Martinez* because he had no counsel during his initial-review collateral proceeding. Thus, this Court finds that Slaughter has arguably met three of the elements under *Martinez*: (1) he had no counsel during his initial-review collateral proceeding, (2) his state post-conviction petition was the initial proceeding regarding claims of ineffective assistance of trial counsel, and (3) Nevada law requires that a claim of ineffective of assistance of trial counsel be raised in a post-conviction habeas corpus proceeding. However, because the analysis of prejudice under *Martinez* to overcome the procedural default of grounds 2(b), 3(d), 5, and 6(a-g) is necessarily intertwined with the merits of those grounds, the Court defers a determination of the fourth element of *Martinez*: whether the claims of ineffective assistance of trial counsel are substantial.

Regarding the procedural default of grounds 7(a-d), Slaughter argues that the trial counsel ineffectiveness allegations in ground 6 excuse the default of the corresponding substantive claims in ground 7. (ECF No. 112 at 25.) When a constitutional claim is procedurally defaulted, and the petitioner tries to demonstrate cause by claiming ineffective assistance of counsel, the claim of ineffective assistance of counsel must not be procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). However, if the petitioner can demonstrate cause and prejudice to excuse the procedural default of the claim of ineffective assistance of counsel, then the claim of ineffective assistance of counsel can be cause to excuse the procedural default of the constitutional claim. *Id*. As such, the Court will defer ruling on whether grounds 7(a-d) are procedural barred until after (1) the filing of an answer and reply and (2) determining whether Slaughter can demonstrate prejudice to excuse the procedural default of ground 6.

Regarding the procedural default of ground 10, Slaughter argues that his appellate counsel ineffectiveness allegation in ground 9(a) excuses the default of the corresponding substantive claim in ground 10. (ECF No. 112 at 25.) The ineffective assistance of appellate counsel in failing to raise a claim on direct appeal in the state criminal proceedings may potentially establish cause and prejudice. *Cockett v. Ray*, 333 F.3d 938, 943–44 (9th Cir. 2003). This Court against defers ruling on whether ground 10 is procedural barred until after (1) the filing of an answer and reply and (2) determining in ground 9(a) whether Slaughter's appellate counsel was ineffective in failing to raise the underlying substantive claim.

### E.    Named Respondents

Respondents argue that Slaughter named new, improper parties as respondents—namely, former NDOC Director Charles Daniels and Nevada Attorney General Aaron Ford—in his fourth-

amended petition. (ECF No. 105 at 22.) Because this Court has already updated the proper

respondent within footnote 1 *supra*, this argument is moot.

### F.     Evidence Not Presented in the State Courts

Respondents noted in a footnote that if and when this Court reaches the merits of any of

Slaughter's claims, the Court cannot consider evidence that Slaughter failed to properly develop

in state court, in accordance with the Supreme Court's decision in *Shinn v. Ramirez*, 142 S. Ct.

1718 (2022), as well as other relevant precedent. (ECF No. 105 at 19 n.3.) Slaughter argues that

(1) Respondents forfeited this argument by presenting it in a cursory manner in a footnote and (2)

the argument is premature. (ECF No. 112 at 26.) In their reply, "Respondents agree with Slaughter

that this issue can be resolved following the parties' briefing the merits of the claims." (ECF No.

115 at 19.) This Court will address this argument during its merits review.

## IV.    EVIDENTIARY HEARING

In his opposition to the motion to dismiss, Slaughter requests an evidentiary hearing—to

the extent that Respondents dispute any of the facts in his opposition to the motion to dismiss—to

prove his allegations of actual innocence and cause and prejudice. (ECF No. 112 at 29.) Because

this Court is able to decide Respondents' motion to dismiss on the pleadings, this Court declines

to hold an evidentiary hearing at this time.

## V.     CONCLUSION

IT IS THEREFORE ORDERED that Respondents' motion to dismiss **[ECF No. 105] is

granted, in part**, as follows: (1) ground 8 is dismissed as untimely, (2) ground 9(c) is dismissed

as procedurally defaulted, (3) grounds 2(b), 3(d), 5, and 6(a-g) are procedurally defaulted, and the

Court defers consideration of whether Slaughter can demonstrate prejudice under *Martinez v. Ryan*

to overcome the procedural default of these grounds until after the filing of an answer and reply in

this action, (4) grounds 7(a-d) are procedurally defaulted, and the Court defers consideration of whether Slaughter can demonstrate cause to overcome the procedural default of these grounds until after it determines whether Slaughter can excuse the procedural default of ground 6, and (5) ground 10 is procedurally defaulted, and the Court defers consideration of whether Slaughter can demonstrate cause to overcome the procedural default of this ground until it determines in ground 9(a) whether Slaughter's appellate counsel was ineffective.

IT IS FURTHER ORDERED that, pursuant to this Court's scheduling order [ECF No. 90], Respondents have 90 days from the date of this order in which to file an answer to the remaining grounds in the fourth-amended petition. Slaughter will then have 45 days following the filing of an answer to file a reply.

IT IS FURTHER ORDERED that the Clerk substitute Brian Williams for Respondent Renee Baker.

DATED: August 9, 2023

_____
ROBERT C. JONES
UNITED STATES DISTRICT JUDGE